IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID V. PEREZ, and DEBRA K. PEREZ, | |
| Plaintiffs, | **8:20CV210** |
| vs. | |
| | **ORDER** |
| CENTURY ASPHALT COMPANY, and STEPHEN DALE FERGUSON, | |
| Defendants. | |

This matter is before Court on Defendants' Motion to Strike Plaintiffs' Expert Witness (Filing No. 50). Defendants request that the Court strike the opinions of Plaintiffs' expert witness, Dr. Joseph Wu, M.D. Alternatively, Defendants request that the Court continue the deadlines in the current progression order to allow them time to locate an expert to respond to Dr. Wu's opinions. For the reasons explained below, the motion will be granted, in part.

## BACKGROUND

On June 5, 2020, Plaintiffs filed suit alleging they were injured when their vehicle was struck by a vehicle operated by Defendant Stephen Ferguson. The Court subsequently entered a progression order providing that Plaintiffs had to complete their Federal Rule of Civil Procedure Rule 26(a) expert disclosures by December 16, 2021. Defendants' deadline for expert disclosures was set as February 20, 2022, but was later extended to September 6, 2022. (Filing No. 46.) Plaintiff's expert witness rebuttal deadline was set as November 7, 2022. This matter is set for trial on February 14, 2023 with the pretrial conference set for January 10, 2023.

On December 15, 2021, Plaintiffs filed a designation of expert witnesses identifying Dr. Wu as an expert witness.  At that time, Plaintiffs produced three reports from Dr. Wu.  (Filing Nos. 51-2, 51-3, 51-4.)  Each report was based on a different imaging scan of Mr. Perez's brain.

Dr. Wu's report regarding Mr. Perez's positron emission tomography ("PET Scan") contains a brief description of the scan itself and the scan's findings.  The report includes images from Mr. Perez's scan and includes a table that seems to compare the findings from Mr. Perez's scan to scans of "average" individuals.    The report provides the following "preliminary conclusion:" "The pattern is consistent with brain abnormalities such as brain injury.  Clinical correlation is recommended. Records can be forwarded to University Neurocognitive Imaging for correlation."  (Filing No. 51-2.)

Dr. Wu's report pertaining to Mr. Perez's diffusion tensor imaging MRI scan ("DTI Scan") indicates that the scan was of good technical quality and states a brief impression from the results of the scan.  The report includes images from Mr. Perez's scan which are accompanied by a table that seems to compare the findings from Mr. Perez's scan to those of "average" individuals.  The report contains one preliminary conclusion:

> The pattern is consistent with brain abnormalities such as brain injury.  Clinical correlation is recommended.  Records can be forwarded to University Neurocognitive Imaging for clinical correlation of finding.  See significant difference FA maps on page 2.  See region of interest analysis beginning on page 3.  See corpus callosum tractography on page 10.

(Filing No. 51-3.)

Dr. Wu's report based on Mr. Perez's quantitative volumetric MRI scan ("Volumetric Scan") does not state a preliminary conclusion but includes a brief statement of the findings of the scan and a chart with some numbers.  (Filing No. 51-4.)  The report states that the scan's findings are consistent with a traumatic brain injury and recommends clinical correlation.  Plaintiffs did not disclose any other reports from Dr. Wu within Plaintiffs' expert disclosure deadline.

Dr. Wu was deposed on August 23, 2022.  (Filing No. 51-5.)  Dr. Wu testified that his general practice is to draft additional reports that follow-up on scans with clinical correlations. He testified:

> Normally, if I had time, I would write what we call a clinical correlation report where I would take the findings of the DTI scan and then correlate it with the records by the neuropsychologist or the patient, you know, like what parts of the report would correspond to, you know, complaints, I would say, memory impairment or concentration impairment in a patient or, you know, a deficit in memory testing or attention testing a neuropsychologist might show. So—but I haven't had a chance to do that in this case. I just had a chance to review the records, not write that clinical correlation report which says how I think the DTI findings correlate with the records that I reviewed, but I can give that to you orally in this deposition.

(Filing No. 51-5.) Dr. Wu did not provide any clinical correlation prior to his deposition. Dr. Wu testified that he wanted to review certain records before he made his findings more definitive, but that he had only reviewed those records shortly before his deposition.

On September 20, 2022, Defendants filed the instant Motion to Strike. One week later, on September 27, 2022, Plaintiffs served a supplemental designation of experts. (Filing No. 55.) The supplemental designation includes a new report from Dr. Wu, titled "Complete Statement of all Opinions and the Reasons for Them," which is dated September 15, 2022. (Filing No. 55.) The report states:

> It is my opinion that there are significant changes in the PET scan, the MRI DTI scan and the MRI QV scan. These changes are documented in my prior reports and better described during my deposition. It is my opinion that these changes were caused by a traumatic brain injury sustained in the collision of June 25, 2019. These findings correlate to the symptoms reported to me by Mr. Perez and further documented by Dr. Perillo. These opinions were also discussed at length during my deposition.

(Filing No. 55-3.)

On October 3, 2022, Plaintiffs filed a "Consent to Extension of Defendants' Expert Deadlines" in response to Defendants' Motion to Strike. (Filing No. 54.) Plaintiffs' response does not explain why the supplemental report was not disclosed earlier, nor does it address Defendants' arguments regarding the exclusion of Dr. Wu's opinions. Instead, Plaintiffs' response indicates that Plaintiffs will consent to Defendants' request for an extension of expert witness deadlines. The response only states the following regarding the sufficiency of Dr. Wu's expert disclosure: "While Plaintiffs do not agree there is any basis for striking Dr. Wu, nevertheless, given the

concerns expressed by Defendants in their motion, Plaintiffs are willing to agree to an appropriate extension of Defendants' expert deadlines." (Filing No. 54.)

## DISCUSSION

Defendants seek to exclude or limit the expert testimony of Dr. Wu, arguing that the opinions he provided in his deposition and supplemental report regarding causation and clinical correlation should be stricken as untimely. Defendants maintain Dr. Wu's opinions regarding clinical correlation and causation were not included within his initial expert reports and were not provided until after the expert disclosure deadline had expired. Defendants also argue Dr. Wu's opinions should be stricken because his initial expert reports did not comply with the disclosure requirements of Federal Rule of Civil Procedure 26.

Under Rule 26(a)(2), written expert reports must contain (1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the facts or data considered by the witness in forming the opinions; (3) exhibits that will be used to summarize or support the opinions; (4) the witness's qualifications, including a list of all publications authored in the previous 10 years; (5) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (6) a statement of the compensation paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2). "When a party fails to provide information or identify a witness in compliance with Rule 26(a) . . . the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). When determining a remedy, the district court should consider, among other things, "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 645 (8th Cir. 2022) (quotation omitted).

As a sanction for an improper disclosure under Rule 26(a), the district court may exclude information or testimony under Federal Rule of Civil Procedure 37(c)(1) unless the party's failure to comply is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Considerations in evaluating whether a violation is justified or harmless include (1) prejudice to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to

which introducing the testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Roderick v. Wal-Mart Stores East, L.P.*, 666 F.3d 1093, 1096-97 (8th Cir. 2012). The Eighth Circuit Court of Appeals has cautioned that, however, that "exclusion of evidence is a harsh penalty and should be used sparingly." *Gruttemeyer*, 31 F.4th at 644–45 (quotation omitted).

The Court agrees with Defendants that Dr. Wu's reports do not fully satisfy the requirements of Rule 26(a). Dr. Wu's reports do not contain a complete statement of his opinions. Two of Dr. Wu's reports only provide a "preliminary" conclusion and each of the reports recommend a clinical correlation. Dr. Wu explained at his deposition that he had not performed a complete clinical correlation at the time he prepared his reports because he did not have the records to do so until shortly before his deposition. However, Dr. Wu's follow-up report titled "Complete Statement of all Opinions and the Reasons for Them," still only states the following regarding correlation: "These findings correlate to the symptoms reported to me by Mr. Perez and further documented by Dr. Perillo. These opinions were also discussed at length during my deposition." So, other than generally referring to Dr. Perillo's documentation, Dr. Wu's new report does not identify any sources he used to formulate his opinion or explain with any detail how his findings correlate to Mr. Perez's symptoms. The supplemental report does not even refer to Mr. Perez's health history or medical records, other than brief references to his brain scans.

Dr. Wu's initial reports provide very little information about what facts or data he considered in forming his opinions. The reports include images and statistics. However, it is unclear what the statistics even mean. The reports do not contain source citations. Dr. Wu testified at his deposition that he relied upon a 42-person "control group" created by a person named Dr. Steven Potkin, but Dr. Wu has not provided any further information about Dr. Potkin or his control group. Further, although Dr. Wu claims his opinions and conclusions are supported by certain published articles, the reports do not identify any articles. The articles are not even identified in Dr. Wu's supplemental report.

Plaintiffs have not offered any legitimate explanation why Dr. Wu's complete statement of opinions and the grounds for them was not provided until after Defendants' Motion to Strike was filed. Nor have Plaintiffs explained why they did not request an extension of the expert disclosure deadline to allow Dr. Wu to perform a clinical correlation. Plaintiffs did not even attempt to address these issues in their response to Defendants' motion.

As a remedy for the deficiencies in Dr. Wu's expert disclosure and the untimely disclosure of correlation and causation opinions, the Court will not strike or exclude Dr. Wu's testimony in its entirety. Dr. Wu's initial reports, though deficient, were timely disclosed. It does not appear that introduction of Dr. Wu's first three reports or testimony limited to what is contained in the reports will disrupt the trial. Defendants were able to depose Dr. Wu and question him about the information contained in the reports. Instead, Dr. Wu will be prohibited from testifying or offering any opinions regarding matters outside of what is set forth in his initial reports. Dr. Wu will not be permitted to amend his reports or supplement his opinion by giving a "clinical correlation" or provide an additional opinion regarding causation. Dr. Wu will not be permitted to introduce or rely upon other facts, data, or exhibits to express his opinions other than what is *specifically* identified or contained in his initial three reports. Allowing Dr. Wu to testify about information not contained in his initial reports would prejudice Defendants. To date, Dr. Wu has not even identified some of the sources he relied upon in forming his opinions. Further, if Dr. Wu were allowed to testify to matters outside his initial reports, Defendants would have to retain and prepare an additional expert witness, which would further delay case progression.

On November 7, 2022 (which was Plaintiffs' rebuttal expert deadline), Plaintiffs filed a Motion to Extend (Filing No. 57), requesting that the Court extend the deadline for Plaintiffs to identify rebuttal witnesses to 30 days following the last deposition of Defendants' experts. (Filing No. 57.) The parties advised the Court that due to witness schedules and availability, the last expert deposition cannot occur until December 7, 2022. Given this, the Court finds there is good cause to extend the rebuttal expert witness deadline. Further, good cause exists based on the pendency of the Motion to Strike at the time Plaintiffs' rebuttal expert witness deadline expired. Due to witness deposition availability and the extension of the rebuttal expert witness deadline, there may be a need for a slight adjustment of other case progression deadlines. The Court will schedule a telephone conference with the parties to discuss this issue.

Accordingly,

**IT IS ORDERED:**

1.      Defendants' Motion to Strike Plaintiffs' Expert Witness (Filing No. 50) is granted, in part, as set out above.

2.      Plaintiffs' Motion to Extend (Filing No. 57) is granted.  The rebuttal expert deadline is extended to January 6, 2023.

3.      A telephone conference to discuss other revised case progression deadlines will be held before the undersigned on December 6, 2022, at 11:00 a.m.   Telephone conference instructions are found at Filing No. 13.

Dated this 29th day of November, 2022.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge